IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| REBA FLORES, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) 1:13CV513 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Reba Flores brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claims for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. The Court has before it the certified administrative record and cross-motions for judgment. (Docket Entries 11, 13.) For the reasons stated herein, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Disability benefits and Supplement Security Income benefits on February 11, 2009. (Tr. 285-86, 89-92.)[1] The applications were denied initially and upon reconsideration. (Tr. 151-54, 166-70.) Plaintiff requested a hearing

---

[1] Transcript citations refer to the administrative record.

before an Administrative Law Judge ("ALJ"). (Tr. 171-72.) After a hearing, on August 27, 2010, the ALJ determined that Plaintiff was not disabled under the Act. (Tr. 93-105.) Plaintiff submitted a timely appeal to the Appeals Council. (Tr. 215-17.) The Appeals Council remanded the claim for further proceedings with specific instructions to the ALJ. (Tr. 112-13.) A second hearing was held on May 9, 2012, before a different ALJ. (Tr. 1.) On July 11, 2012, the ALJ issued an unfavorable decision denying benefits. (Tr. 67-80.) Plaintiff submitted a timely appeal to the Appeals Council. (Tr. 62-63.) On April 24, 2013, the Appeals Counsel denied Plaintiff's request for review of the decision. (Tr. 56-61.) The ALJ's decision became the Commissioner's final decision for purposes of judicial review. 20 C.F.R. §§ 404.981 and 416.1481.

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that she

is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. (*Id.*)

### III. THE COMMISSIONER'S DECISION

At the initial hearing, the ALJ followed the well-established five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 10, 2006. (Tr. 98.) Next the ALJ found at step two that Plaintiff had the following severe impairments: diabetes mellitus with peripheral neuropathy, obesity, hypertension, and anxiety-related disorder with generalized depression. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (Tr. 98) At step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work. (Tr. 99.) The ALJ found that Plaintiff was limited to: standing or walking for six hours in an eight hour workday; required a cane for walking more than short distances; needed the opportunity to stand and stretch at her workstation at 30-minute intervals; should be limited to never climbing ladders, ropes, and scaffolds; occasionally climbing ramps and stairs; occasionally balancing and stooping; avoiding concentrated exposure to hazards and work at heights; she requires restroom access in the work area; and she can perform simple, routine, and repetitive task, in a low stress work environment with limited public contact. (Tr. 99-100.)

3

The ALJ determined that Plaintiff was unable to perform any of her past relevant work. (Tr. 104.) At step five, the ALJ determined that there were jobs which Plaintiff could perform consistent with her RFC, age, education, and work experience. (*Id.*)

As noted, the Appeals Council next granted Plaintiff's request for review. In its decision, the Appeals Council vacated the hearing decision and remanded the case to the ALJ for resolution requiring the ALJ to: 1) give further consideration to the effects of Plaintiff's obesity with respect to her ability to work; 2) further evaluate Plaintiff's subjective complaints; 3) further consider Plaintiff's RFC and to cite specific evidence in support of the assessed limitations; and 4) to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. (Tr. 113.)

On remand, another ALJ addressed these issues. First, the ALJ addressed Plaintiff's obesity. (Tr. 75.) The ALJ reasoned that Plaintiff weight fluctuated over the years but the weight itself was not disabling. (*Id.*) The ALJ stated that Ms. Flores was able to complete light house work and that exercising twice a week increased her energy. (*Id.*) Next, the ALJ described the symptoms and limitations that Plaintiff testified about at trial. (Tr. 74.) Then the ALJ evaluated the symptoms and limitations based on the record, laboratory findings, and hospital records. (Tr. 75-77.) The ALJ found that "the objective evidence showed stabilization of the claimant's physical and mental symptoms." (Tr. 78.) Lastly, a vocational expert testified that even if Plaintiff could only lift and carry 10 pounds, there were a considerable number of jobs in the national economy available to Plaintiff. (Tr. 80.)

4

Consequently, the ALJ concluded that Plaintiff was not disabled. (*Id.*) The ALJ's decision on remand became the Commissioner's final decision for purposes of judicial review.

## IV. ISSUES AND ANALYSIS

Plaintiff raises two issues on appeal. First Plaintiff asserts that the ALJ erred in failing to comply with the Appeals Council's prior remand order. Next Plaintiff contends that the ALJ failed to explain the weight given to the opinions of a consultative examiner. As explained below, the undersigned concludes that the ALJ complied with the Appeals Council's remand order, and that the ALJ properly evaluated the medical opinions in the record.

### A. Claim One

Plaintiff contends that the ALJ failed to comply with the Remand Order from the Appeals Council. (Docket Entry 12 at 2.) In pertinent part, Plaintiff, contests the ALJ's credibility analysis, contending that the ALJ: (1) failed to properly consider the effects Plaintiff's medications have on her ability to work; (2) failed to address Plaintiff's efforts to seek medical support to relieve her symptoms; and (3) failed to consider possible explanations for Plaintiff's noncompliance with medical treatment. (*Id.* at 5.) As explained below, the ALJ's credibility analysis was legally correct and supported by substantial evidence.

Plaintiff's first contention is that the ALJ's credibility analysis is not based on substantial evidence because he did not consider how the side effects of Plaintiff's medication affect her ability to work. (Docket Entry 12 at 5.) In *Craig v. Chater*, the Fourth Circuit provided a two-part test for evaluating a claimant's statements about symptoms. 76 F.3d 585,

5

589 (4th Cir. 1996). First, there must be "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged.*" *Id.* at 594 (quotations and citations omitted) (emphasis in the original). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including the claimant's statements about pain, in order to determine whether a person is disabled. *Id.* at 595-96; 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4). While the ALJ must consider the plaintiff's statements and other subjective evidence at step two, he need not credit them to the extent they conflict with the objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* at 596. Relevant evidence for this inquiry includes the plaintiff's "medical history, medical signs, and laboratory findings," *id.* at 595, as well as various regulatory factors.[2] The regulations do not mandate that the ALJ discuss all these factors in the decision. *See, e.g., Baggett v. Astrue*, No. 5:08–CV–165–D, 2009 WL 1438209, at *9 (E.D.N.C. May 20, 2009) (unpublished).

---

[2] The regulatory factors are: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (vi) any measures the claimant uses or has used to relieve pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3). *See also* SSR 96-7p, 1996 WL 374186, at *3 (listing factors "the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements").

6

Case 1:13-cv-00513-TDS-JLW   Document 15   Filed 02/29/16   Page 6 of 17

Here, the ALJ finds that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" but the statements regarding the intensity, persistence, and limiting effects were not credible. (Tr. 74-75.) Plaintiff contends that the ALJ's decision is not based on substantial evidence because he failed to consider how her medication may affect her ability to work. (Docket Entry 12 at 5-6.) For the following reasons, Plaintiff's argument is unpersuasive.

First, the regulations do not mandate that the ALJ formalistically discuss all of the regulatory factors in a decision. Rather, the ALJ is only required to consider them. *See, e.g., Edwards v. Colvin*, No. 1:12-CV-1249, 2014 WL 4442061, at *3 (M.D.N.C. Sept. 9, 2014); *Baggett*, 2009 WL 1438209, at *9. Consequently, an ALJ's purported "failure" to walk through each of the credibility factors does not warrant a remand where, as here, the bases for his decision is apparent. *See Cichocki v. Astrue*, 534 Fed. App'x 71, 75-76 (2d Cir. 2013); *Clary v. Barnhart*, 214 Fed. App'x 479, 482 (5th Cir. 2007). To the extent Plaintiff suggests otherwise, she is mistaken.

Second, the ALJ explicitly discussed Plaintiff's activities of daily living, which as explained, is a relevant regulatory factor. For example, the ALJ explained how Plaintiff reported that she could handle her personal care without help and could complete light housework. (Tr. 75.) The record also indicates that she exercised twice per week and had increased energy. (*Id.*)

7

Third, the ALJ also considered the medical history, laboratory findings, and medical signs as to Plaintiff's impairments. The ALJ noted that Plaintiff testified that her blood pressure remained high and caused her to experience some shortness of breath and headaches. (Tr. 74.) However, the ALJ found that, after being instructed to increase exercise and to watch her diet, Plaintiff lost weight and her blood pressure fell. As a result, complaints of headaches, dizziness, and upper extremity numbness were at a minimal. (Tr. 75.) Moreover, no chest pain, palpitations, or shortness of breath were reported. (*Id.*) The ALJ also addressed Plaintiff's testimony that she experienced symptoms of crying spells and lack of focus due to depression and anxiety. (Tr. 74.) The ALJ noted that after she applied for disability Plaintiff had not received treatment from a mental health professional. (Tr. 76.) The ALJ reasoned that "records from her primary care physician showed intermittent complaints of depression, mental status examinations generally showed normal mood and affect." (*Id.*) The ALJ also noted that any mental health impairments were stabilized with Lexapro "without any notable changes in dosage." (Tr. 76, 78.)

Additionally, the ALJ considered location, duration, frequency, intensity, and precipitating and aggravating factors alleged by Plaintiff as to the pain resulting from her symptoms. Plaintiff reported that her high sugar caused frequent urination, lightheadedness, and poor sleep. (Tr. 75.) However, treatment notes indicated that after medication adjustments and exercise, Plaintiff reported that she felt better and had more energy. Additionally, the ALJ addressed Plaintiff's testimony of back and leg pain by indicating that

8

the pain was stabilized with medication. (Tr. 74, 76.) The ALJ also noted that Plaintiff's pain level was only reported to be 2 out of 10 at her last office visit. (Tr. 76.)

The ALJ also considered Plaintiff's treatment, dosage, and side effects from medication. The ALJ acknowledged Plaintiff's testimony that her medication caused dizziness. Plaintiff contends that "[t]he ALJ . . . disregarded [her] medicine side-effects by stating that she was still able to drive to town." (Docket Entry 12 at 6.) However, at the hearing Plaintiff testified that although she was afraid to drive because of dizziness, she usually drives to town which is five miles from where she lives. (Tr. 32.) The ALJ correctly summarized Plaintiff's testimony by stating that Plaintiff's medications caused side effects, but she was still able to drive. (Tr. 74.) The ALJ also noted that in 2010, acute hyperglycemia caused Plaintiff to be taken to the emergency room. (Tr. 75.) However, Plaintiff stated that she had not been taking her medication or exercising as directed. (*Id.*)

Plaintiff argues that the ALJ contradicted himself with respect to discussing whether Plaintiff's medication caused side effects. (Docket Entry 12 at 6.) According to Plaintiff, the ALJ stated that Plaintiff testified that her medication caused dizziness; but later, in the same decision, the ALJ stated that no side effects of the medication were reported. (*Id.*) However, the alleged inconsistent statements do not call into question whether the ALJ's decision is based on substantial evidence. When asked at the hearing whether she experiences side effects from her medication, Plaintiff answered "[y]eah, somewhat; diarrhea, nausea, dizziness sometimes . . . ." (Tr. 38.) There is only one other document addressing side effects in the

9

record. During an evaluation conducted by Dr. Atienza, Plaintiff reported that her medication causes migraine headaches and dizziness. (Tr. 551.) The Court is left to guess as to the severity, duration, and frequency of these side effects. Further, Plaintiff does not meaningfully explain why the evidence as a whole cannot support the ALJ's determination. Plaintiff merely states that the ALJ's credibility analysis is not based on substantial evidence because he did not consider how the side effects of Plaintiff's medication affect her ability to work. (Docket Entry 12 at 5.)

Even if the ALJ did make inconsistent statements regarding the side effects of Plaintiff's medication, the ALJ's alleged mistake is harmless. "Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Mullaney v. Colvin*, No. 1:10CV967, 2014 WL 689755, at *9 (M.D.N.C. Feb. 20, 2014). Even if the ALJ did make inconsistent statements "the ALJ's credibility determination would remain supported by substantial evidence in light of the numerous other factors and large body of medical records and other evidence upon which [he] based [his] determination." *Tomassetti v. Astrue*, No. 7:11-CV-88-D, 2012 WL 4321646, at *11 (E.D.N.C. Aug. 22, 2012) *report and recommendation adopted*, No. 7:11-CV-88-D, 2012 WL 4321632 (E.D.N.C. Sept. 20, 2012); *Mullaney*, 2014 WL 689755, at *9 ("[A]ny failure on the part of the ALJ to develop the record further here is ultimately harmless as there is no reason to believe that but for the alleged error this case would resolve differently."). Here, the ALJ's findings that: Plaintiff's weight itself was not disabling, symptoms resulting from hypertension

were reduced, symptoms related to diabetes improved, her back and knee pain level was only 2 out of 10 at her latest office visit, and her mental impairments were stabilized with medication are all supported by substantial evidence. (Tr. 75-78.) Thus, "there is no reason to believe that but for the presumed error, this case would resolve differently." *Toms v. Colvin*, No. 1:10CV856, 2014 WL 509195, at *10 (M.D.N.C. Feb. 7, 2014) *report and recommendation adopted*, No. 1:10CV856, 2014 WL 1338270 (M.D.N.C. Apr. 1, 2014). For all these reasons, Plaintiff's argument lacks merit.

Next, Plaintiff argues that the ALJ failed to recognize her persistent efforts to seek medical support to relieve her symptoms. (Docket Entry 12 at 5, 7.) According to SSR 96-7p, "a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms . . . lends support to an individual's allegations of intense and persistent pain or other symptoms . . . ." SSR 96-7p, 1996 WL 374186 *7 (July 2, 1996). Additionally, SSR 96-7p states that "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." *Id.* Plaintiff makes two arguments regarding the ALJ's alleged failure to comply with SSR 96-7p. (Docket Entry 12 at 7-8.) First, Plaintiff contends, the ALJ failed to consider her efforts to seek medical support. (*Id.* at 7.) Second, Plaintiff argues that the ALJ violated SSR 96-7p by not considering possible explanations regarding her noncompliance with medical treatment. (*Id.* at 7-8.)

11

To support her first argument, Plaintiff contends that her substantial medical record, "[d]espite the limitation of possessing no health insurance and being denied for Medicaid," indicates that she sought all medical assistance reasonably available to her. (*Id.* at 5.) Plaintiff's argument is misplaced. The ALJ's decision expressly acknowledges Plaintiff's constant effort to seek medical support. The ALJ stated that "[t]he longitudinal record showed a history of routine and conservative treatment after the alleged onset date." (Tr. 78.) This indicates that Plaintiff's efforts to seek medical support were considered; however, the ALJ determined that the lack of severity of her treatment only required "routine and conservative treatment." (*Id.*) Therefore, SSR 96-7p is satisfied because Plaintiff's efforts to seek medical assistance were considered in the ALJ's evaluation.

Next, Plaintiff argues that the ALJ violated SSR 96-7p by not considering possible explanations regarding why she did not comply with medical treatment. *Id.* at 7-8. SSR 96-7p also states that an ALJ should consider reasons why a complainant does not comply with medical treatment including financial reasons, side effects ensuing from medication, and religious reasons. SSR 96-7p, 1996 WL 374186, at *7-8. The ALJ complied with SSR 96-7p by indicating several instances where Plaintiff did not comply with her medication treatment because she ran out of multiple types of medication on more than one occasion. (Tr. 75.) The ALJ also stated that, on other occasions, Plaintiff admitted that she was not "taking her [medication] as directed." (Tr. 75-76.) Furthermore, the ALJ stated that Plaintiff "did not receive any treatment from a mental health professional, and based on the limited evidence

12

available, her symptoms were stabilized" when she took her medication. (Tr. 78.) Therefore, the reasons why Plaintiff was not complying with prescribed treatment were addressed by the ALJ.

Plaintiff also contends that the ALJ failed to meet the conditions in SSR 82–59 which authorizes the ALJ to deny benefits based on a claimants failure to follow prescribed treatment. (Docket Entry 12 at 8.) Pursuant to SSR 82–59 a claimant that neglects to follow prescribed treatment that would restore the claimant's ability to work is not disabled. SSR 82–59, 1982 WL 31384 *1 (1982). Four conditions must be satisfied to make this determination. *Id.* However, SSR 82–59 only applies when an individual has a disability but refuses to undergo treatment, without a justifiable reason, that could remedy the disability. *Smith v. Colvin*, No. 1:12CV1247, 2015 WL 3505201, at *5 n.7 (M.D.N.C. June 3, 2015) (finding that SSR 82–59 only applies when the ALJ has determined an individual "would be found disabled under the Act") (quotation and citation omitted); *Hamby v. Colvin*, No. 1:12-CV-00395-GCM, 2014 WL 1874979, at *6 (W.D.N.C. May 9, 2014) (finding that SSR 82–59 only applies when plaintiff's failure to follow the prescribed treatment is the deciding factor in determining whether the claimant is disabled). Here, neither ALJ found that Plaintiff would be disabled in the absence of treatment. (Tr. 80, 105.) Therefore, SSR 82–59 does not apply. *Hamby*, 2014 WL 1874979, at *6.

Lastly, after the briefing was filed in this case, the Fourth Circuit Court of Appeals issued a published decision regarding the two part credibility assessment. *Mascio v. Colvin*, 780

13

F.3d 632 (4th Cir. 2015). *Mascio*—in pertinent part— concluded that an ALJ erred by using, at part two of the credibility assessment, "boilerplate" language that "the claimant's statements concerning the intensity, persistence and limiting effects of [his pain] are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* at 639. The *Mascio* Court reasoned that this method "'gets things backwards' by implying that ability to work is determined first and is then used to determine the claimant's credibility." *Id.* (quoting *Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012)). Instead, "the ALJ here should have compared [the claimant's] alleged functional limitations from pain to the other evidence in the record, not to [the claimant's] residual functional capacity." *Id.* However, this is not the end of the analysis. The Court further reasoned that "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." *Mascio*, 780 F.3d at 639.

Here, the ALJ erred in the instant case by considering the credibility of Plaintiff's testimony through the use of the same objectionable "boilerplate" language used in *Mascio*. (Tr. 74-75.) However, as previously discussed above the ALJ's creditability analysis is discussed in detail elsewhere. (Tr. 74-78.) Immediately after using the boilerplate language, the ALJ evaluated Plaintiff alleged function limitations based on Plaintiff's hearing testimony, "medical signs, . . . laboratory findings and other evidence" in the record. *See Mascio*, 780 F.3d at 639. First, the ALJ listed the symptoms and limitations that Plaintiff testified about at trial. (Tr. 74.) Next, the ALJ evaluated the symptoms based on the evidence in the record. (Tr. 74-78). *Long v. Colvin*, No. 1:13CV659, 2015 WL 1646985, at *1 (M.D.N.C. Apr. 14, 2015) ("After

14

using the 'boilerplate' language, the ALJ identified medical evidence, objective observations of Plaintiff's treating medical providers, and Plaintiff's own previous admissions concerning his mild level of pain and what he was able to do to find that Plaintiff's statements about his pain were not credible."); *Cantrell v. Colvin*, No. 1:14-CV-104-RJC-DSC, 2015 WL 7444633, at *5 (W.D.N.C. Nov. 23, 2015) ("Despite using boilerplate language, the ALJ's analysis explains his credibility findings in great detail, which the Court finds to be supported by the evidence."); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *6 (W.D.N.C. July 17, 2015) (concluding that the ALJ conducted a proper *Mascio* evaluation by "consider[ing] Plaintiff's personal testimony, her daily activities, medical source statements, and treatment records in making his determination"). Additionally, the ALJ stated that based on "the medical evidence and the claimant's testimony[,]" Plaintiff's claims are only partially credible. (Tr. 78.) The ALJ further reasoned that Plaintiff was able to sit through a more than thirty minute long hearing with non-observable problems or signs of side effects from medication. (*Id.*) This case is distinguished from *Mascio* because the ALJ's evaluation of Plaintiff's credibility is based on her personal testimony, observations of Plaintiff at the hearing, her daily activities, medical source statements, and treatment records. Thus, the ALJ's use of boilerplate language as used in *Mascio* is harmless error because he "properly analyzed credibility elsewhere." *Mascio*, 780 F.3d at 639.

15

## B. Claim Two

Plaintiff also contends that the ALJ failed to evaluate and weigh the medical assessments conducted by Dr. Atienza. (Docket Entry 12 at 8-10.) Plaintiff contends that on two occasions Dr. Atienza determined that Plaintiff had "resistance to flexion/extension of the elbow joints, positive bilateral straight leg raise tests at less than 30 degrees, and reduced knee range of motion." (*Id.* at 8-9.) Plaintiff's claim lacks merit because Dr. Atienza's assessment is not a medical opinion. Pursuant to 20 C.F.R. § 404.1527(c), the ALJ must weigh every medical opinion received regardless of its source. *Collins v. Astrue*, No. 1:10CV189, 2011 WL 6440299, at *2 (W.D.N.C. Dec. 21, 2011). A medical opinion has a distinct definition. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Here, Dr. Atienza's assessments were merely physical examinations. (Tr. 545-50, 810-16.) The assessments did not provide an opinion about how Ms. Flore's symptoms affect her ability to function for the purpose of being gainfully employed.[3] *Everett v. Colvin*, No. 3:14-CV-00017-FDW, 2014 WL 6387604, at *4 (W.D.N.C. Nov. 14, 2014) (finding that a

---

[3] Notwithstanding such, the ALJ still considered Dr. Atienza's examinations at step-two and in the ALJ's RFC findings. (Tr. 71, 76.)

16

physician's report was not a medical opinion because he only conducted a physical examination and did not conduct a diagnostic test and did not make objective findings); *Mitchell v. Astrue*, No. 2:11-CV-00056-MR, 2013 WL 678068, at *5 (W.D.N.C. Feb. 25, 2013) (finding that a the physician's statement was not a medical opinion because it did "not reflect his judgment about the severity of the [p]laintiff's impairment or his physical restrictions"). Thus, the ALJ was not obligated to weigh Dr. Atienza's examinations.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED** and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States District Court Judge

February 29, 2016
Durham, North Carolina

17